ESTATE OF ELIZABETH MOESCH, Public Administrator, County of New York, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Moesch v. Commissioner
Docket No. 1096-73.
United States Tax Court
T.C. Memo 1974-275; 1974 Tax Ct. Memo LEXIS 44; 33 T.C.M. (CCH) 1271; T.C.M. (RIA) 740275; October 22, 1974, Filed. Joseph T. Arenson, for the petitioner. Walter C. Welsh, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined a deficiency and penalty in the Federal estate tax of the Estate of Elizabeth Moesch, deceased, in the amount of $9,294.35. Due to concessions by the parties, the issues presented for our decision are: (1) Whether the transfer by the decedent in July or August 1964 of $20,000 was made in contemplation of death within the meaning of section 2035; [1] and (2) Whether respondent properly determined a delinquency penalty pursuant to section 6651(a). FINDINGS OF FACT Some of the facts have been stipulated *46 by the parties. Such facts and the exhibits attached thereto are incorporated herein by this reference. Elizabeth Moesch (hereinafter referred to as "decedent"), a resident of New York, New York, died intestate on January 4, 1966 at the age of 78. Letters of administration were issued to the petitioner, Public Administrator, County of New York, Thomas I. Fitzgerald, on February 4, 1966. On the date of the filing of the petition herein, petitioner's legal residence was New York, New York. The estate tax return of the decedent was filed with the district director of internal revenue, Manhattan District, New York, New York, on January 7, 1970. In 1959, the decedent met and engaged one Arthur Klein, an attorney, to represent her in a civil matter. Although he was unsuccessful, the decedent paid his expenses and later attempted to give him $1,000 worth of American Tobacco stock as payment for his services. Klein agreed to accept payment on the condition that the American Tobacco stock be sold and the proceeds be used to purchase other stock in their joint names. In 1963, the American Tobacco stock was sold for about $1,000 and the proceeds, plus about $300 from Klein, were *47 used to buy $1,300 worth of stock in the Thiokol Co. in the joint names of Klein and the decedent. The decedent and Klein, subsequent to their first meeting, developed a close relationship, which lasted until the decedent's death. She was alone, a retired schoolteacher who never married, with no family except for one living sister with whom she did not get along. She was aware that Klein was not making much money and that his parents were in poor health, his father having cancer and his mother, a heart condition. To help him and to provide herself with some activity, she began going to his office several times a week to do some of his typing and stenography work. Although Klein tried to pay her, she refused to take anything. In April 1962, being aware of his financial difficulties and that his father was sick, the decedent sent Klein a check for $1,000 which he refused to accept. In October 1962, whe wrote to him expressing her concern for him and his mother over the death of his father. She enclosed a check for $100 for him to use to take his mother out and cheer her up. In the letter accompanying the check, she wrote: If you need money, let me help you. I have more *48 than I need, and there is no one I would rather give it to than you. Sickness drains one's resources, and if I can make your burden lighter, won't you let me do it? * * * It appears that Klein did not believe that the decedent had much money so he also refused to accept this gift. In July of 1964, when she was 77 years old, the decedent fell and fractured her hip. She was taken to the hospital where she remained during July and August. Having no one else to turn to she asked that Klein be notified. He came immediately and thereafter visited her almost daily. While in the hospital, the decedent realized that if she died, all of her estate - almost $138,000 in value - would have gone to her sister. She asked Klein how this could be prevented and all the money left to him without using a will. On his suggestion, the decedent's two checking accounts, one at the Chase Manhattan Bank and the other at the Chemical Bank New York Trust Co., were made joint accounts with the decedent and Arthur Klein as joint owners. In July or August of 1964, a check payable to the order of Arthur Klein in the amount of $20,000 was drawn by the decedent upon the joint account of the decedent *49 and Arthur Klein at the Chase Manhattan Bank. Between August 1964 and May 1965, funds were transferred from the two joint checking accounts to eleven savings accounts jointly owned by the decedent and Klein. Both the transfer of the $20,000 by decedent to Kelin and the transfers of the checking accounts to their joint names were pursuant to an undated letter of consent executed by the decedent while she was in the hospital. In preparing the decedent's income tax return for 1964, Klein did not file a gift tax return for the $20,000. [2]
Decedent was hospitalized for 6 to 8 weeks. Kelin arranged for her to leave the hospital in August of 1964 and enter a nursing home, where she recuperated until May of 1965. During the time spent there, the decedent expressed a desire to leave, get an apartment and a dog, and to do some traveling. In May 1965, she moved into an apartment where she lived until her death on January 4, 1966, less than 1-1/2 years after *50 the transfer to Klein. Petitioner was appointed the administrator of her estate on February 4, 1966. To discover what property the decedent died possessed of, he instituted a hearing in the Surrogate's Court of the County of New York on May 13, 1966, to examine Arthur Klein. It was at that time he learned of the savings accounts in the names of the decedent and Klein jointly and of the $20,000 transfer. Although the petitioner neither requested nor was granted an extension of time for filing, he did not file the estate tax return for the decedent's estate until January 7, 1970, over 4 years after her death. On the return, the petitioner did not include in the decedent's gross estate the $20,000 that the decedent had given Klein. In his notice of deficiency, respondent determined that the $20,000 given by the decedent to Arthur Klein in 1964 was includable in the gross estate of the decedent pursuant to section 2035 and that a penalty pursuant to section 6651(a) was applicable because of the delay in filing. OPINION Section 2035 provides that the gross estate of a decedent shall include the value of property transferred without adequate consideration in contemplation *51 of death. A rebuttable presumption is created by the statute that all such transfers made within 3 years of death are made in contemplation of death. [3]
*52 The presumption is one of law rather than fact and as such is not evidence in and of itself. (C.A. 9, 1950); (C.A. 9, 1943). To rebut the presumption and the determination, the petitioner must not only come forward with evidence that the gift was not made in contemplation of death, but must also carry forth the burden of proof. (C.A. 8, 1928); ; (C.A. 2, 1950), certiorari denied ; (C.A. 5, 1948); (C.A. 5, 1947), certiorari denied ; (C.A. 2, 1943), certiorari denied ; (C.A. 3, 1939); . The motive behind the transfer must *53 be of the type that would lead to a testamentary disposition. If this type of motive rather than a life motive is dominant, then the gift is in contemplation of death even though imminent death is not anticipated. In , the Supreme Court defined the phrase "in contemplation of death," as follows: * * * The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is "near at hand." We must thus look to the facts and circumstances relating to decedent's state of mind at the time of the transfer. ; ; ; (C.A. 6, 1944), certiorari denied . In determining the dominant motive of a decedent *54 in making an inter vivos transfer of property, this Court in , stated that the factors to be considered are, as follows: * * * (a) The age of the decedent at the time the transfers were made; (b) the decedent's health, as he knew it, at or before the time of the transfers; (c) the interval between the transfers and the decedent's death; (d) the amount of the property transferred in proportion to the amount of property retained; (e) the nature and disposition of the decedent, e.g., whether cheerful or gloomy, sanguine or morbid, optimistic or pessimistic; (f) the existence of a general testamentary scheme of which the transfers were a part; (g) the relationship of the donee or donees to the decedent, i.e., whether they were the natural objects of his bounty; (h) the existence of a long established gift-making policy on the part of decedent; (i) the existence of a desire on the part of the decedent to escape the burden of managing property by transferring the property to others; (j) the existence of a desire on the part of the decedent to vicariously enjoy the enjoyment by the donees of the property transferred; and (k) *55 the existence of the desire by the decedent of avoiding estate taxes by means of making inter vivos transfers of property. * * * At the time of the gift in question, the decedent was 77 years old. She had been recently hospitalized for an injury from which she thought she had nearly died, and she was concerned with the distribution of her estate upon her death. Soon after she realized what would have happened if she had died, the decedent inquired of Klein how it could be arranged for him to receive her money on her death. It was pursuant to this inquiry that Klein arranged for the creation of joint accounts for himself and the decedent and for the outright gift of $20,000 from the decedent to himself. When the $20,000 transfer was made, Arthur Klein was also designated to receive all of decedent's money on her death. Coming at a time when the decedent was 77 years old and when she had thoughts of death, such gift is a strong indication of testamentary intent on the part of decedent. There has been no showing that a life motive was the dominant reason for the transfer. In order to overcome the presumption, supported by the age, physical condition, and state of mind of the *56 decedent, petitioner can only point to the fact that the decedent was favorably disposed towards Klein and made an effort to give him money in April and October 1962. While it cannot be denied that the decedent looked upon Klein as she might a close member of her family, this relationship merely confirms the donative intent. By reason of the decedent's age, the condition of her health and the testamentary nature of the gift in question, we find that the transfer of $20,000 was in contemplation of death within the meaning of section 2035. Sections 6018 and 6075(a) require that when the gross estate of a decedent exceeds $60,000 the executor must file an estate tax return within 15 months after the date of decedent's death. [4] In the case of a failure to file a return, section 6651(a) imposes a penalty of 5 percent of the outstanding estate tax liability for each month the return is late, not to exceed a total of 25 percent. [5] The regulations under section 6651 provide that, "a taxpayer who wishes to avoid the addition to the tax for failure to file a tax return or pay tax must make an affirmative showing of all facts alleged as a reasonable cause for his failure to file such return *57 * * *. If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause." Sec. 301.6651-1(c), Procedure and Administration Regs. Absence of willful neglect, alone, is not sufficient reason for avoiding the penalty. There must also be reasonable cause *58 for such failure. . Petitioner, other than for a statement at trial that he knew of the transfers but had no funds, has not offered any evidence to establish a reasonable cause for the failure to file the estate tax return until almost 4 years after the decedent's death. Decedent died on January 4, 1966. Petitioner was appointed the administrator on February 4, 1966. Although discovery was complete on May 13, 1966 - the date of the Surrogate's hearing - the estate tax return was not filed until January 7, 1970. Since no extension was granted to the petitioner and since he has failed to show reasonable cause for filing the estate tax return late, the penalty of section 6651 is applicable. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. It appears that the decedent told Kelin that she had not made any gifts in the past. Therfore, he did not feel it was necessary to file a gift tax return because of the $30,000 specific exemption pursuant to sec. 2521. ↩
3. SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. (a) General Rule. - The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. (b) Application of General Rule. - If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death. ↩
4. Sec. 20.2002-1, Estate Tax Regs., makes it clear that as used in sec. 2002, the term "executor" includes an administrator. ↩
5. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax. - In case of failure - (1) to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; ↩